## Case No. 14,796.

### UNITED STATES v. CITY BANK.

[6 McLean, 130.] [1]

Circuit Court. D. Ohio. Oct. Term, 1854.

BANKS — ILLEGAL DEPOSIT — ACTION TO RECOVER — DRAFTS — GOVERNMENT AGENTS — EVIDENCE.

1. No bank, under the sub-treasury law, can become a depository of the public money.

2. The law prohibits such a deposit, and inflicts a severe penalty on the public officer who makes it.

3. But a state bank may engage with the secretary of the treasury to transmit a draft to New Orleans or elsewhere.

4. This does not render a deposit necessary.

5. The same draft received by the bank may be transmitted, or having the specie at the place, the bank may draw on it and pay the treasury at New Orleans.

6. This accommodates both parties, without expense.

7. Where the money of the government is improperly placed in a bank, the illegality of the transaction is no bar to a recovery.

---

1 [Reported by Hon. John McLean, Circuit Justice.]

8. The agents of the government do not bind the government. when their powers are transcended.

[Cited in State v. Sooy; 39 N. J. Law, 149.]

9. The money, in such a case, would be received wrongfully, and without any authority from the assent of the government.

10. It could be recovered by the government, if not on the contract, on the general counts.

11. And in such a case the writing would be evidence to charge the bank.

At law.

Ewing, Corwine & Morton, U. S. Dist. Atty. Stanbery, Swan & Andrews, for defendant.

OPINION OF THE COURT. This action is brought by the United States to recover one hundred thousand dollars from the City Bank, which were received by it under a contract to convey the same from New York to New Orleans. The first count in the declaration charges that on the first of November, 1850, the City Bank of Columbus contracted with the United States to transfer the sum of one hundred thousand dollars, monies of the plaintiffs, from New York to New Orleans, to be deposited in the treasury of the United States at that place, by the first of January, 1851; and the said defendant, then and there, received the said sum, and promised to transmit and deliver the same to the treasury of the plaintiff in New Orleans, etc. And that the said defendant did not transfer the said sum of money by the 1st of January, 1851, nor at any other time, but converted the said sum of money to its own use. To this count a general demurrer has been filed.

On the argument of the demurrer, it was insisted by the counsel for defendant, that the contract was void, as against the policy and the provisions of the act of congress, of August 6, 1846, to provide "for the collection, safe keeping, transfer and disbursement of the public revenue" (9 Stat. 59).

Argument of Counsel:

"This act requires all receipts and expenditures of the government to be made in coin or treasury notes. Section 18. It declares certain rooms in the treasury building at Washington, in the mint at Philadelphia and New Orleans, and in the custom houses of Boston, New York, Charleston, and St. Louis, to be the treasury of the United States; and provides for the appointment of four assistant treasurers, at the four last-named places. Sections 2–5. Section 6 requires all public officers to keep safely, without depositing in banks, etc., all public money, till the same is ordered to be transferred or paid out; and when orders for transfer are made, to make such transfers. Section 10 authorizes secretary of treasury 'to transfer' the monies in the hands of any depository to the treasury, or to any other depository, as the safety of the monies, or the convenience of the public service, may require. Section 13 allows to public officers all necessary expenses for

safe keeping, transferring, and disbursing public monies. Section 16. That all officers, and other persons, charged by this or any other act, with the safe keeping, transfer, or disbursement of the public monies, are required to keep an entry of each sum received, and of each payment or transfer. And if any one of the said officers 'shall use, loan, exchange,' or 'deposit in any bank,' any public money entrusted to him for safe keeping, disbursement, transfer, or any other purpose, every such act shall be deemed an embezzlement, punishable by indictment, imprisonment from 6 months to 10 years, and to fine equal to the sum embezzled. And the provisions of this act shall be construed to extend 'to all persons charged with the safe keeping, transfer, or disbursement of the public monies,' whether such persons be indicted as receivers or depositaries of the same: and the refusal of such person, whether in or out of office, to pay any draft, etc., for any public money, no matter in what capacity received, or to transfer or disburse any such money, shall be prima facie an embezzlement.

"It is manifest that the intention of this act is to divorce the government from the banks, and to prohibit all bank agency in its fiscal arrangements. It prohibits all public officers from so much as using a bank as a place of deposit, and it declares that the deposit in a bank of monies entrusted to a public officer, or other person, for safe keeping or transfer, shall be construed an embezzlement. In the face of those provisions, it is absurd to say that a bank may be an agent to make a transfer, or that the contract of a bank for such a purpose is valid. The act of transferring the money involves a receipt and custody of the money, and its transportation to the place of delivery. For the time being the entire control of the money is in the person charged with the transfer. Such a custody or control over public money by a bank is contrary to the policy of this act, which proceeds on the idea of its insecurity. The simple act of depositing money, whilst in a course of transfer in a bank, is declared to be an embezzlement, and amounts to a high offense. If a bank cannot be used by a person charged with a transfer, so much as a place of temporary deposit or safe keeping —if that is forbidden by such a severe penalty—how can it be argued that the entire custody and control of the money, its receipt, transportation, and delivery, may be lawfully entrusted to such an agency?

"It may be very well maintained that this law considers the business of transfer as an official business, just as much as the receipt and safe keeping of the money. The sixth section requires the public officers to make the transfer. The thirteenth section allows to officers all necessary expenses for transferring. It is only in the sixteenth section that any provision appears which indicates that other persons than public officers can be charged with the business of transfer; but this provision applies as well to the safe keeping and disbursement (by other persons) of the public monies, as to their transfer, and these acts—i. e., the safe keeping and disbursement, are clearly official acts. It is difficult to imagine how a private individual can be charged with the safe keeping and disbursement of public money. It is also provided that all persons charged with any of these duties, are to make an entry of every payment or transfer. This carries the idea of official duty, the keeping of office books and accounts. So also does the last clause of the section, which provides that it shall apply as well to persons in as out of office. Persons out of office are clearly those who have been in office, but whose term of office has ceased in some way before their official duties were closed, and, therefore, for the finishing of their official duties, they are treated as officers, though denominated 'other persons.' But if the act is capable of being so construed as to allow this business of transfer to be matter of individual employment and private enterprise, and there was nothing in the act which, as matter of public policy, would prevent the employment of a bank as a transfer agent; yet, on another ground, a bank could not be so employed. The only guards provided in the act for the safe keeping, transfer and disbursement of the public monies, are these two—the official bond of the public officer, which secures the performance of the duty civiliter, and the prosecution for embezzlement, which secures it criminaliter. In one, if not in both these modes, the public treasure must always be secured. If the business of transfer can only be entrusted to an officer, then the security is in both modes; but if a person, other than an officer, can be so employed, then the security, the only sort provided, is the liability to a prosecution.

"A corporation, such as a bank, cannot be prosecuted in the mode provided by this act. It does not come within the purview of the law as a person capable of undertaking the duty of transfer, for the reason that it cannot be made liable to the provisions of the act intended to enforce and secure the performance of the duty. Nor can it be claimed that the public is secured under such a contract with the corporation, by the liability of the individual members or servants of the corporation, to a criminal prosecution. It is the corporation which makes the contract, and which is entrusted with the money, not the individual members or servants of the corporate body. 'Whenever a corporation makes a contract, it is the contract of the legal entity; of the artificial being created by the charter; and not the contract of the individual members.' Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 587.

"The City Bank not capable of making this contract: The terms of the contract, as they are expressed, bind the bank to transfer

$100,000 of the public money from New York to New Orleans, to be deposited in the treasury of New Orleans, by the 1st of January, 1851, free of charge. It is clear from the whole scope of the sub-treasury act, that a transfer of public money from one depository to another, involves simply the transportation of the money in specie, i. e., of the very money. It is in the nature of a bailment, a contract to carry and safely deliver the identical money entrusted to the agent. Every one knows that such was understood to be the meaning of this law, and that one great objection to the law, was the unnecessary cost of transporting coin between distant points, when transfers by means of drafts or bills of exchange would be so cheaply and readily made. Notwithstanding these objections, the law was so framed as to exclude all such paper or bank facilities, and there has been an annual appropriation to meet these extraordinary expenses. Vide Appropriation Act 1849 (9 Stat. 363), $15,000. The use, loan, investment, or exchange of public money for other funds, is expressly forbidden, as to all officers or persons entrusted with it for safe keeping or transfer. Section 16. This being the nature of the contract, we maintain that this bank had no capacity to make it.

"The City Bank is a corporation chartered by the state of Ohio, which, in addition to the ordinary incidents of a corporation, is expressly limited by its charter as follows: 'To loan money, buy, sell, and discount bills of exchange, notes, and all other written evidences of debt, receive deposits, buy and sell gold and silver coin, and bullion, collect and pay over money, and transact all other business properly appertaining to banking.' 43 Laws Ohio, p. 44, § 51. It is too clear for argument, that such a transaction as this does not come within any of the enumerated powers. It is not a loan of money, a buying, selling, or discounting, a deposit, a purchase, or a sale of coin, or a collection and paying over of money. Nor does it come under the general provision of business properly appertaining to banking; for it is certainly no proper banking business to transport bullion or any other commodity, either for hire, or as in this contract, without charge. It is simply a bailment, a contract to carry and safely deliver, without any use of the thing. That the subject matter of the contract is coin, or money, does not make it any more a banking business than if it were corn or any other specific article. The only plausible ground on which such a contract could be put as properly appertaining to banking, would be to suppose that the bank might receive and use the coin in New York, and by means of drafts or bills of exchange, effect the payment of a like sum in other coin at New Orleans, and so have the incidental benefit in the rate of exchange, or otherwise, between funds at New York or New Orleans. That would, in effect, be a dealing in coin or in exchange. But such a dealing is expressly forbidden to persons entrusted with the transfer of the public money. It can neither be bought, sold, or exchanged. It must be kept without use, and transferred without use, and cannot, in any way, or by any device, be made the subject of dealing or traffic, by individuals, or, most emphatically, by banks.

"The foregoing points arise on demurrer to the first count of the declaration, which sets up a contract with the bank."

The entire written argument by the counsel for the bank is given, in order that the strength of the grounds assumed may be shown.

Many of the arguments, in behalf of the defendant, are admitted. It was, no doubt, intended by the sub-treasury act, as it is usually called, to separate the moneyed action of the government from the banks. Although the bank of the United States had for nearly twenty years acted as the fiscal agent of the government, transmitting and paying public money at all points in the Union, when required, without loss or expense, the bank was rendered unpopular, and the deposits were withdrawn from it, and temporarily, state banks and other places were used for deposits, until the sub-treasury law was passed. This change has caused a heavy charge on the treasury, besides the losses that have been incurred; but it has been sustained until this time, by the popular voice. No deposit of public money can be made by a public functionary in a state bank, without a violation of the sub-treasury act. And it may be admitted that the act speaks of the sub-treasury officers, as making transfers of public monies, when ordered by the secretary of the treasury. These transfers to disbursing agents are not necessarily to be made in specie. The twentieth section of the sub-treasury act provides, "That no exchange of funds shall be made by any disbursing officers or agents of the government, of any grade or denomination whatsoever, or connected with any branch of the public service, other than an exchange for gold and silver; and every such disbursing officer, when the means for his disbursements are furnished to him in gold and silver, shall make his payments in the money so furnished; or when those means are furnished to him in drafts, shall cause those drafts to be presented at their place of payment, and properly paid according to the law; and he shall make his payments in the money so received for the drafts furnished, unless, in either case, he can exchange the means in his hands for gold and silver at par."

From the above provision, drafts were authorized to be transmitted in making disbursements, and these drafts may be exchanged for gold and silver. There is no prohibition in the act against the employment, as an agent to transmit funds, either an in-

dividual banker or a bank. And it is believed that under the present system bankers have frequently been employed to transmit the funds of the government, from one part of the country to another. During the war with Mexico, and for some time after its termination, the heavy disbursements were necessarily made at the West. New York, from its large importations, was the principal depository of the government; it was therefore necessary to transmit money from New York, where it was received, to New Orleans and other places in the West, where it was to be disbursed. Drafts on New York will readily command specie at New Orleans. Now, the secretary of the treasury, it appears from the declaration, being desirous to transmit one hundred thousand dollars from New York to New Orleans, draws a draft for that amount on the sub-treasurer of New York, which is received by the defendant, under an agreement to pay it into the sub-treasury at New Orleans. The very draft received by the defendant, may be transmitted to New Orleans, and there exchanged for specie, or the defendant, having specie at New Orleans, may draw on it in behalf of the sub-treasurer in New Orleans, in payment for the New York draft. Such a transaction would be the safest, the most expeditious, and the least expensive mode, of remitting the money. No one can be so competent as the secretary of the treasury to direct these exchanges, as he necessarily has a knowledge of the fiscal action of the government, including all places of deposit, and the amount of disbursements necessary at different points. That this may be done by the secretary, under the law, is clear.

But it is argued that the City Bank, by its charter, has no power to transmit coin from one point to another. That it might as well undertake the transportation of corn or anything else, which not being within the charter, would not bind the bank. But this does not meet the question. The question is not as to the transmission of coin, or any other commodity; but the City Bank is authorized to deal in bills of exchange. Of this there can be no doubt. The bank has power, as declared in its charter, "to loan money, buy, sell and discount bills of exchange, notes, and all other written evidences of debt." This is ample for the purposes of this case. Having funds in New Orleans, or the means of making a deposit there, the bill in question may be supposed to have been received by the bank, to meet obligations incurred in New York, or to constitute a fund there on which drafts may be drawn. This, in effect, is a mere exchange of a fund in New Orleans, for a deposit of the same amount in New York. By this transaction the government is accommodated without expense, and also the bank.

There are numerous cases, where two persons enter into a contract in fraud of the law, and against its policy, the rights of no third party being involved, in which neither a court of chancery nor of law will give relief as between the contracting parties. He who has gained an advantage will not be required to account, as the wages of iniquity are not adjustable at law or in chancery. But this rule does not hold, where the government is a party. The agents through whom the government acts, possess a limited authority, which, if transcended by them, does not bind the government. The contract or writing in such a case would be evidence of the receipt of the money, and having come into the possession of it without right, the illegality of the transaction would be no bar to a recovery. The possession of the bank would be wrongful, and without the assent of the government. And in such a case the contract would charge the bank, if not on a special on a general count in assumpsit. And the stockholders of the bank, having received the money through their agents, would be legally bound to refund it. But in the present case there was no illegality, as the contract with the bank was not a deposit of money, but a matter of exchange, which both parties might enter into. The demurrer is, therefore, overruled.

[There was a judgment in this case in favor of the defendant, which was affirmed in error by the supreme court. 21 How. (62 U. S.) 356.]